C. D. McGuffey, Adm'r, *v.* H. W. Johnson *et al.*

BILLS AND NOTES. *Endorser. Agreement of maker to pay out of proceeds of a particular note.* An agreement by the intestate in his lifetime with an accommodation endorser that he will, in consideration of the endorsement, pay the debt out of the proceeds of a particular note when collected, although in parol, and *a fortiori* if recognized by the intestate in writing, would be binding, and operate as an equitable appropriation of the specific fund, which would not be affected by the death of the intestate and the insolvency of his estate, the appropriation of the fund having been formally directed by the intestate in his lifetime.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

W. M. BAXTER and HENDERSON & JOUROLMON for complainant.

T. S. WEBB and GEO. WASHINGTON for defendants.

COOPER, J., delivered the opinion of the court.

Charles D. McGuffey, as administrator of James B. Johnson, deceased, filed his bill against the heirs and creditors of his intestate for the administration of the assets as an insolvent estate. John Baxter became a party defendant, and filed a cross-bill claiming a specific appropriation of certain funds of the estate to the satisfaction of a particular liability of the intestate by note on which he, Baxter, was the accommodation endorser. The chancellor decided adversely to Baxter, and he appealed.

In October, 1873, the Knoxville University purchased from James B. Johnson a small tract of land for about $5,000, executing to him its several promissory notes therefor, with John Baxter, John F. Spence and Wm. Rule as sureties. One of these notes was for $1,000, which Baxter paid or settled, and another for $1,126, payable March 1, 1874. Johnson being pressed for money, applied to Baxter for the payment of these notes, and he paid the note for $1,000, and endorsed for Johnson's accommodation his note for $1,000, dated 12th of August, 1874, at three months, which was discounted by, or became the property of the People's Bank. Baxter claims in his cross-bill that he endorsed this note upon the condition that Johnson would apply the proceeds of the note for $1,126, when collected, or so much thereof as might be necessary, to the payment in full of the note for $1,000 made to the People's Bank. On October 25, 1875, judgment was recovered by McGuffey, as ad-

ministrator, against the sureties on the note for $1,126, and the greater part of this judgment has been collected. The estate of Johnson is insolvent.

No proof has been introduced in support of Baxter's claim. It is sought to be supported upon the admissions in the answer of McGuffey. He says, in his answer, that he received the note for $1,126, and another note of the Knoxville University with the same sureties, for $1,000, from the Exchange and Deposit Bank then owned by Baxter, "and respondent presumes they were there at the date of the note given to the People's Bank." He adds: "Respondent certainly had instructions from Johnson to pay that note out of the proceeds of said (two) notes which were afterwards reduced to judgment by him as administrator. but he had no information from Johnson to the effect that any agreement had been made that it shoutd be done. Respondent has lately, with a view to this question, examined a number of letters which he received from Johnson after his departure for Colorado, (which took place very soon after giving the People's Bank note), and the letters show great anxiety to pay up the said People's Bank note, and also the note assigned to Broughton, Ford & Co., (one of the Knoxville University notes), and a great desire to collect the Knoxville University notes, but the only thing respondent finds in any of them that might be considered as alluding to any question of legal right in the matter is a letter written from Greely, Colorado, October 26, 1874, in which he says: 'P. S. As Baxter may try to stay legal proceedings by holding the

Knoxville University notes as security for his endorsement at People's Bank, perhaps you had better get them now anyhow.' * * The sentence quoted is the only one (in the correspondence of Johnson with respodent) respondent can find which makes any reference to said notes being held in any way as security for the payment of said People's Bank note. There is, however, a letter written by James B. Johnson to his brother Henry W. Johnson, which is in respondent's possession, which contains the following, viz: 'I left three notes, aggregating $3,126, with the Exchange and Deposit Bank for collection, from proceeds of which John Baxter receives $1,000, and interest, 10 per cent, from September 1, really has proceeds of one $1,000 note, from the proceeds further is to be paid $1,000 loaned me by the People's Bank when due, balance will be put to my credit, and used in adjustments. These notes are past due, and will probably be paid within sixty days.' Said letters bear date September 16th, 1874, at St. Louis, while Johnson was on his way to Colorado for his health." The respondent adds that he had paid into court, under its order, the money collected by him on the University notes.

Baxter's claim is that he endorsed the note to the People's Bank for the accommodation of Johnson, in consideration of the promise of Johnson to apply so much of the proceeds as might be necessary of the note for $1,126, when collected, to the payment of the note to the People's Bank. Such an agreement, although in parol, would, as between the paaties, constitute a binding contract, and be an equitable appro-

priation of a specific fund, upon a sufficient consideration, to the satisfaction of a particular debt. But the letters of the intestate, quoted in the answer of the administrator, recognize the agreement, and the last cited letter expressly directs so much of the proceeds of the University notes mentioned, manifestly meaning the notes in controversy, as may be necessary to be paid on the People's Bank note, and only the balance put to his credit, and otherwise used. It is true, the intestate does not say in so many words that there is an agreement to that effect between him and Baxter, but what he does say fairly implies such an agreement, when taken in connection with the facts stated or conceded in the answer. The statutes regulating the administration of insolvent estates were not intended to affect, and do not affect liens, equitable or legal, acquired and perfected in the lifetime of the deceased. It is only what remains after the discharge of the incumbrances that goes into the fund for distribution: *Fields* v. *Wheatley*, 1 Sneed, 351; *Winton* v. *Eldridge*, 3 Head, 362; *Kinsey* v. *McDearmon*, 5 Cold, 399; *Henderson* v. *McGhee*, 6 Heis., 55.

Reverse the decree, and render a decree for the petitioner with cost.